IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| BOBBY DAVIDSON, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-3063-CV-S-ODS-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability insurance benefits and supplemental security income benefits. The Commissioner's decision is affirmed.

I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to a determination of whether the decision is "supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion." Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (citations omitted). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). Substantial evidence means "more than a mere scintilla" of evidence;

rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

## II. BACKGROUND

Plaintiff was born in 1973, and has at least three years of high school education.  R. at 21-22, 136, 181, 289, 298.  Plaintiff applied for disability insurance benefits and supplement security income in August 2012, alleging an onset date of April 15, 2012.  R. at 14, 136-150.  His applications were denied, and he requested a hearing.

After the hearing and upon review of the evidence in the Record, the ALJ found that Plaintiff had the following severe impairments:  agoraphobia; mood disorder, due to chronic pain with depressive features; anxiety disorder, not otherwise specified; tobacco abuse and dependence; very mild emphysema; asthma; chronic obstructive pulmonary disease ("COPD"); polycythemia[1]; lumbar back pain and cervical back pain; and right hand paresthesia.  R. at 16.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except that he cannot lift or carry more than five pounds occasionally or frequently with his right upper extremity; while seated, he needs the ability to shift from side to side at will; he cannot push or pull levers with his right upper extremity; he cannot reach above shoulder level with his right upper extremity; he can occasionally push or pull levers with his lower extremities; can occasionally bend, twist, and turn (seated or standing); he cannot climb ropes, ladders, or scaffolds; can occasionally stoop, squat, crouch, and climb stairs; cannot crawl or kneel; gripping and grasping wrist movements with the right upper extremity, as well as handling, fingering, and feeling, can be performed no more than frequently; cannot pick up small items, such as jeweler's tools or coins, with his right upper extremity; cannot perform a power grip with his right upper extremity; cannot use air or vibrating tools; cannot use motor

---

[1] Polycythemia is characterized by "an increase in blood volume as well as in the number of red blood cells."  Stedman's Medical Dictionary, at 1534 (28th ed. 2006).  The Court is permitted to take judicial notice of a word's meaning as given in standard works such as dictionaries.  See N.Y. Life Ins. Co. v. Calhoun, 97 F.2d 896, 898 (8th Cir. 1938) (citation omitted).

vehicles; cannot work at unprotected heights; requires an office environment due to breathing problems; can have no more than occasional contact with coworkers, supervisors, or the public; and cannot respond appropriately to usual work situations in a routine setting that involves complex instructions or tasks. R. at 18. Based upon the RFC and the testimony provided by the vocational expert ("VE"), the ALJ concluded that Plaintiff was not disabled and could perform work as a mica machine operator and addresser. R. at 22-23.

### III. DISCUSSION

#### A.

Plaintiff's first argument is that the ALJ's RFC is not supported by substantial evidence, and the evidence in the Record shows that he is more limited than the RFC determined by the ALJ. The Court disagrees.

First, in the function report provided to Defendant, Plaintiff represented he tries to help his father in the barn, works on the trailer house, cares for animals, has no problem with personal care, prepares his own meals, helps with dishes, helps with laundry, performs minor repairs around the house, goes outside as often as possible, drives a car, and goes grocery shopping. R. at 168-171, 177. His hobbies include playing video games and woodworking. R. at 172, 177. Plaintiff stated his medical conditions affect his ability to lift, squat, bend, stand, reach, walk, sit, and use hands. R. at 173. He cannot hold heavy weights, such as twenty-five pounds; he could not squat because his feet go numb; bending makes him dizzy; he can only stand for one to two hours; he has difficulty reaching; he cannot walk more than one-quarter to one-half of a mile; he cannot sit for more than twenty to thirty minutes or his legs go numb; he has lost dexterity, strength, and sensitivity in his hands. R. at 173, 175. Plaintiff also reported that although he did not like crowds, he handled work stress well. R. at 174. Several of Plaintiff's representations in his function report regarding his limitations appear in the ALJ's RFC.

3

Second, Plaintiff testified he had pain in his non-dominant hand, and he had difficulty gripping with that hand. R. at 32-33, 41. Plaintiff stated he had chest pain and had been diagnosed with COPD, but he admitted he continues to smoke against medical providers' orders. R. at 33-34, 243, 245, 250, 259-61, 334, 336. He testified that he has neck and back pain that worsens when he reaches above shoulder level. R. at 34-35. Plaintiff must use his legs to lift things over ten pounds. R. at 36, 173, 175. Plaintiff stated he could only stand for ten to fifteen minutes, which is much less than the one to two hours he had reported in his function report. R. at 36, 173, 175. He opined that he could walk thirty or forty feet before having to stop, which is a much shorter distance than what he previously represented in his function report. R. at 38. 173, 175. Plaintiff testified that he suffers from anxiety, which worsens when he interacts with other people. R. at 37. Similar to the function report, several of the limitations to which Plaintiff testified appear in the ALJ's RFC.

Finally, the medical evidence provides substantial evidence for the limitations included in the ALJ's RFC. Between February 2010 and October 2010, Plaintiff was seen three times for non-cardiac chest pain, cough, and shortness of breath. R. at 304-06, 313-14, 330. Between April 2012 and January 2013, Plaintiff was seen by a nurse practitioner on four occasions (twice for bronchitis) and visited the emergency room on three occasions (twice for chest pain and once for inflammation in his mouth). R. at 243, 245, 248, 268-73, 276-78. In April 2012, June 2012, and September 2012, Plaintiff did not complain of chest pain. R. at 245, 248, and 250. And in October 2012, Plaintiff told the nurse practitioner that he "overall feels better" and had no other complaints. R. at 243. With regard to the two emergency room visits for chest pain, Plaintiff was diagnosed with non-cardiac chest pain. R. at 270-73, 276-78. Although he was recommended to do so, there is no record of Plaintiff following up with a physician after those visits to the emergency room. In fact, other than emergency room visits and undergoing consultative examinations to obtain medical assistance, there is no record of Plaintiff being seen by a physician after the onset of his disability, other than a dentist.

From January 2013 through July 2013, Plaintiff was seen in the emergency room and continued to obtain medical treatment from a nurse practitioner. R. at 259-61, 265-

4

67, 318-22, 334-35. While he complained of occasional chest pain and shortness of breath, Plaintiff also reported he had "dramatic improvement" with an inhaler and had been "doing okay," but there is at least one entry indicating that Plaintiff was not using his medication as prescribed. R. at 260-61, 263. During his timeframe, it was noted that Plaintiff's symptoms were intermittent. R. at 259-61, 265-67, 318-20, 334-35.

Throughout this medical treatment, Plaintiff did not consistently report issues with his right hand, as the ALJ properly noted. R. at 19. However, the ALJ included limitations of Plaintiff's right hand in the RFC. R. at 18. Although Plaintiff had only twice reported allegedly disabling back pain and never received treatment for this purported condition, the ALJ included limitations pertaining to this condition in the RFC. R. at 18, 20. Likewise, Plaintiff never requested or received any treatment for his alleged psychological conditions, but the ALJ included the limitation that Plaintiff could only have occasional contact with coworkers, supervisors, and the public, and he could not respond to complex instructions or tasks. R. at 18, 20.[2]

Contrary to Plaintiff's argument, there is not substantial evidence in the record to support greater limitations than those set forth in the ALJ's RFC. Rather, upon consideration of Plaintiff's function report, his testimony, and the medical evidence in the Record, this Court finds that there is substantial evidence to support the RFC determination made by the ALJ. The Court further finds that the ALJ properly explained the bases for his RFC determination, and based upon the Record, it is not necessary to obtain a consultative medical examination or seek clarification from a medical source.

B.

Plaintiff also argues the ALJ erred by relying on the VE's testimony about jobs Plaintiff could perform. Specifically, Plaintiff raises an issue with the VE's testimony that

---

[2] To the extent that Plaintiff is also arguing that the ALJ improperly discounted the opinion of Dr. Wilson, that argument fails. The ALJ considered the opinion of Dr. Wilson, who conducted a consultative psychological examination in November 2012. The ALJ specifically stated that he relied upon Dr. Wilson's opinions regarding abnormalities on an objective personality testing given by Dr. Wilson to Plaintiff in formulating the RFC. R. at 20.

Plaintiff could perform work as a mica machine operator, a job that is classified as "light." This is in conflict with the ALJ's RFC (and the hypothetical given to the VE during the hearing) which was limited to sedentary work. Defendant concedes that the mica machine operator is classified as "light." Doc. #10, at 14. There was no explanation by the ALJ regarding the conflict between his RFC determination (which was limited to sedentary work) and the conclusion that Plaintiff could perform work in a position beyond the sedentary limitations set forth the ALJ. While this was an error by the ALJ, the Court must now turn to whether the matter must be reversed and remanded because of this error.

In making his decision that Plaintiff was not disabled, the ALJ relied upon Plaintiff's ability to perform work as an addresser, not just as a mica machine operator. R. at 22. Plaintiff does not argue that the VE's testimony that Plaintiff could perform work as an addresser and the ALJ's reliance on that testimony conflicts with the ALJ's RFC. Further, Plaintiff does not argue that the job of addresser does not exist in significant numbers. Nonetheless, the Eighth Circuit has found that an ALJ's decision is supported by substantial evidence when the ALJ relies upon a VE's testimony that is based upon a proper hypothetical (as is the case here) identifying jobs that the plaintiff is able to do. See e.g., Hulsey v. Astrue, 622 F.3d 917, 922 (8th Cir. 2010) (citation omitted) (concluding that a VE's testimony constitutes substantial evidence when it is based upon a hypothetical that accounts for the plaintiff's proven impairments); Weiler v. Apfel, 179 F.3d 1107, 1110-11 (8th Cir. 1999) (holding "[w]e need not exhaustively compare [the plaintiff's] residual functional capacity to every job recommended by the vocational expert," and finding that the VE's testimony that the plaintiff could perform one job for which there were 32,000 positions nationwide was substantial evidence supporting the ALJ's conclusion that there are significant numbers of jobs that Plaintiff could do); House v. Shalala, 34 F.3d 691, 695 (8th Cir. 1994) (finding that the ALJ properly relied on the VE's testimony in finding there were significant numbers of jobs in the economy the plaintiff could perform even though the VE identified one job that did not fit the ALJ's RFC). The Court finds that the substantial evidence in the Record supports the ALJ's determination that Plaintiff could perform work as an addresser of which there are a significant number of jobs in the economy.

6

## IV. CONCLUSION

The Court's review discerns no legal error on the ALJ's part. The Court concludes there is substantial evidence in the record as a whole to support the ALJ's decision, so the denial of benefits is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: October 13, 2015             UNITED STATES DISTRICT COURT